# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**JONNIE RAY ALLMOND**                                     **PLAINTIFF**
**ADC #098953**

v.                  No: 4:21-cv-00525 LPR-PSH

**SANDRA L. LAKE**                                          **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I. Introduction

Plaintiff Jonnie Ray Allmond filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on June 17, 2021, while incarcerated at the Arkansas Division of Correction's

North Central Unit[1] (Doc. No. 2). Allmond claims that defendants Sandra L. Lake, APN, and Dr. Marty W. Hearyman were deliberately indifferent to his serious medical needs.[2] On a prior motion for summary judgment, the Court determined that Allmond exhausted available administrative remedies with respect to his § 1983 claims against Lake based on his August 11 and August 24, 2020 encounters with her. *See* Doc. Nos. 24-25. Allmond's claims against Dr. Hearyman and his remaining claims against Lake (if any) were dismissed without prejudice due to his failure to exhaust available administrative remedies. Doc. No. 25.

Before the Court is a motion for summary judgment, brief-in-support, and statement of facts filed by Lake (Doc. Nos. 33-35). Allmond filed a response to Lake's motion, a brief-in-support, and a statement of undisputed facts (Doc. Nos. 37-39). The Court notes that Allmond failed to specifically controvert most of Lake's asserted facts in his statement of disputed facts; accordingly, her uncontroverted facts are deemed admitted. *See* Local Rule 56.1(c). Lake's statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute, and Lake is entitled to judgment as a matter of law.

---

[1] Allmond is currently incarcerated at the ADC's Tucker Unit. *See* Doc. No. 32.

[2] Allmond's claims against Health Services Administrator Marjorie Hall and Deputy Director Rory Griffin were previously dismissed for failure to state a claim upon which relief could be granted. *See* Doc. Nos. 4 & 9.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, and must instead demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).

An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .".  Fed. R. Civ. P. 56(c)(1)(A).  A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

In *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009), the Eighth Circuit Court of Appeals discussed the requirement that facts be viewed in the light most favorable to the nonmoving party when considering a motion for summary judgment.  The Court stated, "[i]f 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them."  *Id.* at 790 (*quoting Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III.  Facts

#### *Allmond's Claims*

Allmond alleges that he made numerous sick call requests to Lake at the ADC's North Central Unit, complaining of stomach pain, diarrhea, oily/greasy stools, and sometimes pale or white stools.  Doc. No. 2 at 4.  He claims he had a

biopsy in May of 2019, but did not receive a diagnosis. *Id.* Allmond states that in January of 2020, he asked Lake to test him for Exocrine Pancreatic Insufficiency (EPI), but she refused because he did not have weight loss and his labs did not indicate he had EPI. *Id.* at 4-5. Allmond alleges he was subsequently diagnosed with EPI at the University of Arkansas for Medical Sciences (UAMS) in April of 2021. *Id.*

### *Allmond's Relevant Medical Records*[3]

Allmond was seen at the UAMS gastroenterology clinic on October 7, 2019, for suspected malabsorption syndrome. *Medical Records* (Doc. No. 35-1) at 1. His only reported problem to the UAMS gastroenterologist (GI) was chronic diarrhea. *Id.* The GI noted, "He reports . . . No fever, chills, sweats, dysphagia, odynophagia, nausea, vomiting, abdominal pain, appetite or weight loss changes."[4] *Id.* The GI recommended various lab tests as well as an esophagogastroduodenoscopy (EGD) and colonoscopy. *Id.* at 2. Follow-up was recommended in four months. *Id.* A consult request was generated on October 10, 2019, for the four-month GI follow-

---

[3] Lake submitted copies of Allmond's medical records from October 7, 2019, through April 28, 2021 (Doc. No. 35-1). Dr. Horan authenticated those records. *See Horan Declaration* (Doc. No. 35-2) at 1-2.

[4] Providers' notes are transcribed verbatim without any corrections for misspellings or mistakes.

up. *Medical Records* at 3. Two consult requests were generated on November 21, 2019, for the EGD and for the colonoscopy. *Id.* at 5-6.

Allmond had the colonoscopy and EGD at UAMS on January 24, 2020. *Medical Records* at 7-13. The colonoscopy findings were normal, and it was noted multiple biopsies were performed. *Id.* at 8. The EGD revealed grade A esophagitis (mild) in the lower third of Allmond's esophagus. *Id.* at 10-11. A small hiatal hernia was also seen; otherwise, normal mucosa was noted in the whole stomach. *Id.* Biopsies were also performed. *Id.* It was recommended he resume a regular diet. *Id.* at 8 & 13.

Lake saw Allmond on July 29, 2020, to review his EGD and colonoscopy results from UAMS. *Medical Records* at 14. She reviewed the results with Allmond and noted he had an upcoming follow-up appointment at UAMS. *Id.* Lake noted that she had Allmond sign a consent for release of medical records from UAMS in order to obtain the biopsy results. *Id.* Lake also noted that the patient was noncompliant with his diabetic diet and insulin and that he wanted to discontinue his diabetic diet against medical advice. *Id.* at 14-16. She noted he had made commissary purchases of foods such as candy, chips, and honeybuns, his blood

sugars were in the 350-500 range, and he had lost five pounds since the beginning of June.[5]  *Id.* at 14.

Lake saw Allmond again on August 11, 2020.  *Medical Records* at 17.  According to Lake's notes, Allmond stated he "thinks he has EPI (exocrine pancreatic insufficiency). states on way to court he heard something on radio about this."  *Id.*  Her notes indicate he reported having diarrhea, oily and pale stool 10-12 times a day.  *Id.*.  Lake's notes further state:

> review of weights and labs shows consistent [weight] without [weight] loss. denies abdominal pain, denies N/V, no reported loss of appetite, BS+ times 4 quads, reports mild tenderness in LLQ on palpation . review of labs no anemia or microcytic anemia. when mentioned he would be monitored for the diarrhea and oily stools in RH states he will sign a refusal . had amylase and fecal fat stool done last year 5/2019 and was to have FU with Dr. Hearyman regarding these test and was later sent out to GI for EGD and had bx done. is scheduled for FU with GI and presumed biopsies as when requested we were unable to obtain these test results.

*Id.*  Lake noted that Allmond was scheduled in October 2019 for a follow-up with GI post-EGD and biopsies, but the follow-up may be delayed due to COVID-19.  *Medical Records* at 19.

Allmond's follow-up consult history reveals the following:  UAMS called on February 18, 2020, to reschedule Allmond's appointment for May 18, 2020; UAMS

---

[5] Allmond weighed 185 pounds on July 29, 2020.  *Medical Records* at 14.  He otherwise consistently weighed around 190 pounds.  Allmond does not assert that he suffered weight loss.  *See Statement of Undisputed Facts in Opposition* (Doc. No. 39) at ¶ 4 ("I had all symptoms except weight loss.").

called again on March 11, 2020, to reschedule the appointment for June 29, 2020; UAMS called on July 1, 2020, to reschedule the appointment for August 24, 2020 due to the COVID-19 pandemic; UAMS called yet again and canceled the August appointment, stating they were not seeing inmates at that time, so he was seen by Lake that day for follow-up until UAMS approved and rescheduled the GI follow-up. *Medical Records* at 4. It was noted at each appointment change that Dr. Hearyman stated the consults were non-emergent and Allmond could wait to be seen. *Id.*

Lake saw Allmond again on August 24, 2020. *Medical Records* at 4, 20-22. By this time, she had received the biopsy results from UAMS and went over those with him. *Id.* at 20. Her notes state:

> normal mucosa of the whole colon, Biopsy results -duodenal mucosa with no specific pathologic abnormalities . colonic mucosa with no specific pathologic abnormalities . EGO-esophagus mucosa grade A esophagitis was seen in the lower third of the esophagus. stomach lumen A small hiatal hernia with normal mucosa in the whole stomach , normal mucosa in the whole duodenum
>
> has pending FU with UAMS GI on hold due to Covid-19

*Id.* Lake instructed Allmond to follow up with the nurse at sick call if needed. *Id.* at 22. He was not noted as making any complaints that day. *Id.*

Allmond was finally seen in UAMS' GI clinic on April 28, 2021. *Medical Records* at 23-25. Dr. Shashank Garg noted:

> Mr. Johnnie Allmond is a 51 y.o. year old male who is in GI clinic for follow up of chronic diarrhea and suspected Malabsorption syndrome. His work up after last visit showed normal celiac serology, stool giardia Ag, EGD/ colonoscopy including biopsies. His HbA1c was elevated to 7.9 and pancreatic elastase was <15. He continues to have the same diarrhea as last time. He is on fiber supplements and has stopped taking Metformin.

*Id.* at 23. Allmond's weight was noted to be 192, and his BMI was 28.35. *Id.* at 24. His abdominal examination was normal. *Id.* There is reference to a work-up showing EPI. *Id.* at 25. At that time, the GI recommended that Allmond receive pancreatic enzyme replacement, which he received. *Id.*

### *Dr. Chris Horan's Opinion*

Dr. Chris Horan is a non-party medical doctor and the Regional Medical Director for WellPath LLC, the contracted private healthcare provider that furnishes medical services to ADC inmates. He reviewed Allmond's medical records and prepared a declaration in support of Lake's motion for summary judgment (Doc. No. 35-2) ("*Horan Declaration*"). Dr. Horan was asked to provide his professional medical opinion, utilizing his medical judgment, as to whether Lake provided adequate medical care to Allmond. *Horan Declaration* at 1. His opinions are based upon his review of the records and his education and experience. *Id.* at 1-2.

In reviewing Allmond's medical records, Dr. Horan made several observations. He noted that Allmond's noncompliance with his diabetic diet was relevant because diabetes affects the pancreas, and Allmond's noncompliance with

medically recommended diabetic treatment and diet could contribute to his problems. *Horan Declaration* at 3. Dr. Horan also opined that it was not in Allmond's best interest for him to refuse to be monitored for the collection of his reported diarrhea and oily stools when he saw Lake on August 11, 2020. *Id.* According to Dr. Horan, Allmond's refusal to cooperate – to allow Lake to obtain a stool sample while he was in a secure environment – precluded her from obtaining labs which may have helped her diagnose his condition. *Id.* Finally, Dr. Horan noted that while there is a reference to a work-up showing EPI (a malabsorption disorder) in Dr. Garg's report, the work-up itself is not reflected in the particular note sent back to the unit, nor was a separate record of the April 2021 work-up provided to the unit.

Dr. Horan opined that Lake did not make a mistake in her interactions with Allmond on August 11 or August 24, 2020. *Horan Declaration* at 5. He stated:

> She recorded Mr. Allmond's belief that he had EPI, and she properly analyzed his symptomology. Her notation of the triad was correct as the three primary symptoms of EPI are weight loss, fatty stools, and abdominal pain and bloating. When Ms. Lake saw him, he had not experienced weight loss as it remained consistent at 190 pounds for months. He did not report abdominal pain when he saw her on either August 11 or August 24, 2020. He was taking fiber to add bulk and to solidify his stools for his only symptom, diarrhea, and he had indicated his refusal to submit a stool sample. Ms. Lake was aware of the colonoscopy, EGD, and biopsies and she ensured that those records were received by the unit, reviewed by her, and shared with Allmond. None of the diagnostic studies reflected the need for any urgent or emergent care. Nothing received from UAMS as of that date indicated a diagnosis or recommended treatment for EPI. Importantly, Ms. Lake

>   specifically noted that he had a GI consultation appointment pending. EPI is an unusual diagnosis and it was proper for him to be referred to the gastroenterologist.

*Id.* (internal citations and footnotes omitted). Dr. Horan noted that Allmond weighed 192 in April 2021 and did not report abdominal pain to the GI. *Id.* Allmond maintains that he had all symptoms except for weight loss, but does not specifically assert that he complained of pain to Lake. *See Statement of Undisputed Facts in Opposition* (Doc. No. 39) at ¶ 4 ("I had all symptoms except weight loss.").

Dr. Horan further noted that that UAMS rescheduled and/or canceled all of Allmond's follow-up appointments there, not the unit; that the first two rescheduled appointments were before the COVID-19 lockdowns, which indicated to him that the gastroenterologist did not identify Allmond's condition to be anything other than routine; and that the remainder of the cancellations were due to the COVID-19 global pandemic. *Horan Declaration* at 4. He concluded there was nothing in Allmond's records to indicate that he was harmed in any way by the delay in seeing a specialist at UAMS. *Id.* at 6. Dr. Horan noted that Allmond's condition was not life-threatening, he had no signs of severe disease, no complaints of pain, and his weight remained stable. *Id.*

In Dr. Horan's opinion, to a reasonable degree of medical certainty, there is no evidence of indifference on Lake's part toward Allmond's medical needs; rather, it is his opinion that Lake's medical decisions were appropriate and did not

negatively affect his medical outcome relating to his EPI diagnosis. *Horan Declaration* at 6.

### IV.  Analysis

The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to inmates in their custody. *Estelle v. Gamble,* 429 U.S. 97, 102–03 (1976).  To succeed with an inadequate medical care claim, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs. *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997). This requires a two-part showing that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it. *Id.; see also Farmer v. Brennan,* 511 U.S. at 837; *Estelle v. Gamble,* 429 U.S. 97, 105 (1976).  Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

The undisputed material evidence in the record does not establish that Lake was deliberately indifferent to Allmond's serious medical needs on August 11 or August 24, 2020.  On August 11, she documented his complaints of diarrhea and pale and oily stool and his belief that he might have EPI.  She noted he denied having

abnominal pain or loss of appetite, and refused to allow her to conduct stool tests to monitor his diarrhea. *Medical Records* at 17.  On August 24, Lake reviewed Allmond's biopsy results with him; these were mostly normal and did not indicate he had EPI or warranted any further specific treatment.  Lake noted that Allmond was due to have a follow-up with a GI at UAMS, but that was on hold due to Covid-19. *Id.* at 20.  There is no indication that Lake was responsible for this delay; rather, UAMS re-scheduled his appointments, and Dr. Hearyman indicated the consult was not emergent.  Lake's actions simply do not evidence deliberate indifference to Allmond's serious medical needs.  Allmond's opinion that he should have been tested for EPI sooner constitutes a disagreement with Lake's treatment decisions that fails to rise to the level of a constitutional violation.

## V.   Conclusion

The undisputed facts establish as a matter of law that Lake's treatment of Allmond does not evidence deliberate indifference to his serious medical needs.  The undersigned therefore recommends that Lake's motion for summary judgment (Doc. No. 33) be granted.  Judgment should be granted in favor of Lake on Allmond's pending claims of deliberate indifference.

SO RECOMMENDED this 22nd day of May, 2023.

_____
UNITED STATES MAGISTRATE JUDGE